Good morning Judges, Paul Kleinfeld and Ward Law. My name is Mary Geddes and I represent Nikolai Caymen who's the appellant. This case involves the question of whether Mr. Caymen had a sufficient possessory interest and expectation of privacy to warrant, to contest the warrantless search of his laptop after he had uninterrupted and exclusive possession of the laptop for 50 days. In the beginning of August, Nikolai Caymen had purchased a laptop from a local business over the phone, under his own name, using a credit card number. A month later in September, a credit card holder, Mrs. Langley, called the TBC store in Ketchikan to complain of a laptop purchase being mistakenly built to her visa account. The company did not contact Mr. Caymen but instead called the police. About 50 days after Mr. Caymen had acquired the laptop, the police came knocking with a warrant to seize the laptop and to look for evidence of the crime of a fraudulent use of an access device. Mr. Caymen told the police the laptop was his and that there had to be a mix-up. He had ordered it and picked it up using his own name and he said he had used his own visa number when he called over the phone. The police also knew or learned that the store never contacted Mr. Caymen to tell him of a problem. The credit card holder is another established customer at the same store and that Mr. Caymen had, in fact, on occasion used his own visa number at the same store making purchases there. Excuse me, Counsel? Yes. As I recall, we don't have any Ninth Circuit law on personal property obtained by fraud. Is that correct? I think that is true. Now, on hotel rooms obtained by fraud, I recall reading a recent decision by Judge Trott that said where the hotel room was obtained by fraud, the guests did not have a legitimate expectation of privacy. But I think in your 28J letter you cited some cases that are recent and go the other way. Is that right? There are two cases, I think, that are cited in the 28J letter. One is Kunag and the other is Bautista. Both are opinions of this Court that were written after the briefs in this case were published. Bautista is instructive, I think, because it talks about basically how even when there was a report of a credit card being stolen and that card having been used online to purchase or make a reservation at a hotel occupied by Mr. Bautista, that because the report was unconfirmed and because the hotel had not acted to repossess the premises, the police were not acting on sufficient information to establish that Mr. Bautista was in unlawful possession of the hotel room and to make their warrantless entry. I think it is, looking at those cases, it's important to, I think, consider what the government, that it was, according to Kunag, it's the government's burden to establish in the evidentiary hearing and the motion to suppress that Mr. Kamin, excuse me, was not in lawful possession of the laptop. It strikes me that what we're really doing here is deciding when the person should have a legitimate right of privacy that the Court recognizes by requiring a search warrant to search it. And it seems kind of circular to approach it any other way. I'm trying to figure out how we decide that sort of thing. Yes. In other words, how would you distinguish Bautista? Is it an evidentiary issue? What level of certainty that we have that there was fraud and it was not a legitimate transaction? Well, I think that there was a sufficient, certainly what is not challenged here on appeal is we're not challenging the probable cause to obtain the search warrant, the initial search warrant that seized the laptop. That was seized pursuant to an initial search warrant 103. What happened in this case, of course, is that we had, and this was conceded at the evidentiary hearing, was that the officer agreed that he hadn't asked for the authority to search the laptop just to seize it. And so it was being held, but then what happened ultimately was a warrantless search of the computer's contents. What is the current law on briefcase searches, when it's okay for the police to take the briefcase but then they open it up and look through all the papers? Do you happen to recall? I don't know, Your Honor. I can't give you a good response on that. I think it's notable that at the evidentiary hearing, the government did not basically, what the court relied upon ultimately was the information that Mr. Kamen had some other credit card numbers at his home and that he had used two of them at another local business. But it was not shown at the evidentiary hearing that there was any connection between those numbers, their presence in Mr. Kamen's room. I guess if it's not his, an analogy could be drawn as somebody who's using his boss's laptop or his employer's laptop and has the contraband pictures on it. And I think in those we say that there's no reasonable expectation of privacy, don't we? Yes, we do. How would you distinguish this? Because in this case there was no determination of ownership. Wouldn't it be his burden to establish a reasonable expectation of privacy? Actually, he had established that he gained possession under his own name from someone in authority to give him possession. And that there was no question of the relationship between him and the item and his exclusive use of that item. There was no one else who had the ability to access that item or use it. This is not an employer situation. Excuse me. He demonstrated that he possessed it. He didn't demonstrate that he owned it. Well, he demonstrated that he had received possession of it from someone lawfully in possession of it. And he certainly asserted that he had obtained it by legitimate means. He asserted that, but there was strong evidence to the contrary because the credit card that he entered here by the officer was that given that both individuals had been Visa card holders and customers at that store, is that it was possible that there had been a mix-up. So the question is, where there might have been a mix-up and the store took no action to either note or correct the problem or repossess the item, Mr. Kamen was oblivious of any problem with his possession of it. Furthermore, you know, it's not an item that was merely a car. It's an item into which he placed personal papers. Wait, he didn't have any reason to know that there was a difficulty with his possession? Not according to anything established at the evidentiary. I thought he used some woman's credit card number. I beg your pardon? I thought he used some woman's credit card number, not his own credit card to buy it. No, what was established at the evidentiary hearing was that he told the officers he had called and given his credit card number over the phone. And it was established at the evidentiary hearing that both of them, both the credit card, the owner, Mrs. Langley and Mr. Kamen, had Visa card numbers. They had both been customers at the same establishment and both made purchases there. So that is an uncontroverted fact. Oh, he testified at the hearing and said, I used my own credit card number when I bought it. What was admitted into the hearing was the transcript of the interview between Officer Rojas and Mr. Kamen. That's when he said he used his own credit card number. He did not testify at the hearing. He did not testify at the hearing. But his statements to Officer Rojas Those are not under oath. What about the testimony that was under oath at the hearing? At the hearing, Officer Rojas agreed that Mr. Kamen had expressed surprise, indicated that there must have been a mix-up, asserted that he had used his own Visa credit card number, and that was the information that Officer Rojas had. I'd like to reserve a short time to respond. Thank you. Thank you, Counsel. Counsel. Good morning, Your Honors. Please, the Court, Counsel, Steve Scrocchi for the government. Let me see if I can help you out with your questions concerning what you're supposed to be doing or what you can do with this case, because it's very clear from the research that we provided to the Court that there is an issue about what one, an officer, is supposed to do when confronted with a situation where somebody says, this is legally mine, the officer has more than ample reasonable suspicion and probable cause to suspect that it's not. And it seems from the line of cases, especially the Supreme Court cases of Rojas and Salvucci, that the Supreme Court states that one is not to look at the common law concerns about property rights when determining the legality of searches and seizures under the Fourth Amendment. And I think in the Ninth Circuit, given what Judge Kleinfeld pointed out as the disparity in two opinions, the Martinez case, the Punag case, and the Bautista case, that makes ample sense, because it puts law enforcement in a difficult position, whether it be an automobile search, a search of a briefcase, the search of a purse, that somebody says that's legitimately mine. I think nobody here is articulating that we should have a bright line rule as to what the proper standard should be, but I think it should be done on a case-by-case basis. What do we have in this case? I don't recall an express finding of fact. There may be an implicit finding of fact. I had thought he bought the thing with some woman's credit card number, not his. I can answer that. Clear of the fact. And let me tie this into why I think it's important on a case-by-case basis that the facts should be controlling in these types of situations. In this case, Officer Rojas had, before he ever contacted Mr. Kamen, specific information that Mr. Kamen had used three different credit card numbers that did not belong to him. He used those credit card numbers to attempt to purchase computers from two different businesses in Ketchikan. One computer he purchased and later rejected or sent back. One credit card he used, again, not in his own name, was not accepted by the company. The third resulted in the purchase of this laptop. That's the issue that we have here in this case. So by the time the officer in this case came to the door and went to the judge and got a that he had already identified and other people had identified, other officers in his department had informed him about this activity, that this specific individual was perpetrating credit card fraud. That's what his determination was. This is different from what was decided in Bautista, because in Bautista, the officers just received a call. That's sort of vague, what you said so far. You said he had information. You didn't say who told him. You didn't say exactly what the information was. I apologize. And we don't know exactly what the policeman had when he actually looked at the files. He had, as to the laptop computer that was purchased at Tongass Business Center, he actually went to the store, interviewed the person, was given the name of Nikolai, which is the defendant's first name in this case, ran a photo lineup. The person identified Mr. Kamen. And in the record, Mr. or Officer Rojas confronted Mr. Kamen with all of this, all of the investigatory evidence. Additionally, he received information from other officers in his department that a Nikolai Kamen or a Nikolai had attempted to purchase computers with these names. So he had information that directly linked him to Mr. Kamen, which led to the issuance of the first search warrant to Mr. Kamen's residence. So it wasn't a case like Bautista, where the hotel operator calls up and says, come take a look. This is a different circumstance where actually the officer had conducted an investigation to a significant extent and determined that there was a sufficient probable cause to get a search warrant. So that's the difference, the distinction between the cases that we have on Bautista and here. None of the cases cited by either party, nor in my research that I've conducted since, establish that courts, the government, law enforcement, have to provide a judicial determination as to the specific property ownership. I don't think the property ownership matters, as you said right at the opening. What we're looking for is reasonable expectation of privacy that's legitimate, so it's ran out the door, evaded capture. He wouldn't have a reasonable expectation of privacy. If he had obtained the computer by a credit transaction and had never paid his bill, but had also not returned the computer, and he'd been using it for a year and a half, then I think it's very doubtful that he would be denied a reasonable expectation of privacy. This case is sort of in the middle. He's been using the computer for about six weeks. He obtained it by fraud, but not by force, apparently, but we don't have a finding of fact to that extent, and I'm wondering just how to categorize it. Well, again, I think the facts of this case make it a little different, because if you had, and I would agree with you, Your Honor, to some extent, but if you had a possibility of mistake. Well, he says to the policeman, he says, I use my own credit card number. It's my legitimate computer. He says, we don't contest that. He stated to the police officer when he was interviewed that I made, that there's some mistake, but the officer knows through his investigation that he's done this two other times. Our position would be that erodes completely any real subjective expectation of privacy that he has. Had it been in one circumstance, which is why the facts are so critical in the overall perspective that the Court's trying to do here, had he had one receipt, then you might say that's a real possibility, but we have two. We also have evidence that the defendant worked at a hotel, a local Ketchikan hotel, Gilmore Hotel, at the front desk, where he could have, or he did in all probability, obtain these receipts with the names of these individuals with those credit cards, which the detective actually referenced as being one of the ones used in these transactions. Those things taken up together in the totality add up to he has no subjective expectation here because he knows it's stolen. He knows he did it fraudulently. So that takes care of the first prong that we're concerned about, whether he does have a subjective expectation. As to the other prong, whether the expectation is one if he does have a subjective expectation that society would deem to be objectively reasonable, I think the answer is clearly no. Again, if he had one receipt, that might be a different matter, but we don't have one receipt here. We've got one credit card number. We've got three, and we've got receipts. Additionally, the court, Judge Beislein below, was provided with the copies of the interview of Detective Rojas, heard Detective Rojas testify. He heard of all the excuses that Mr. Kanan made concerning what he did, why there was a mistake, why this was a factual impossibility. He was free to discount those and did so. Did Judge Beislein make any findings that are a little more explicit than I recall? He mentioned in his order several times that this computer was obtained by fraudulent means. He didn't specifically list in bullet form, here are my findings and fact, but he was very clear in his order that this was obtained by fraud. Well, he made some findings at ER 260, which, and what we're looking at is whether the judge who issued the warrant to search the contents of the hard drive of the computer had probable cause, right? That would be as to the third search warrant. The third search warrant. Yes. So what we're, I mean, it seems to me that it's so far, there's not, he doesn't have a legitimate expectation of privacy as to taking the computer, the actual physical computer, but that the search of the hard drives and that that's really what we're focusing on here. And it seems to me that which judge, I mean, they had a warrant to go do that, which was based on a conclusion that there was credit card fraud going on here and that they would find information on a hard drive about the stolen credit cards, right? Yes. That was his primary motive throughout his entire investigation. He testified to the court, he said he suspected and he had information that Mr. Kamen had been in trouble with the law in Washington State, that he had prior convictions for child pornography possession, but his, none of that made it to the magistrate judge issuing the search warrants, none of it. He was concerned primarily with obtaining evidence of credit card fraud that could have been taken over the internet. From his training and experience, he had heard information, had been trained that individuals could obtain credit card numbers through the internet. When he walked into Mr. Kamen's room, he saw that both computers, the laptop and the desktop were connected to a DSL, a digital subscriber line, which provided fast access to the internet. So his thrust of the credit card fraud. All right. So he goes there and then all of a sudden he finds child pornography on the laptop and that's the root of this whole thing. And that's the issue because that's almost the scope of the search issue. I'm not, that's almost as... The scope of the search issue is the warrants to search for evidence of credit card fraud and they're apparently searching more broadly. I don't know how you would... I'm not that literate. I can answer that for you. Let me make sure I understand what your concern is. Are you concerned that he exceeded the scope of the search in finding child pornography? Yes. We talked about that in the evidentiary hearing. What his testimony was that he knew there were programs, files, photos of credit cards that could be obtained through a search or through the internet that could be found on the computer. He used a specific software program, a computer crime forensic program called NCASE. And CASE allows one to effectively, this will be testified to, capture a hard drive in its entirety. He began a search using NCASE to look for scanned images of credit cards, credit card numbers, and the like. As soon as he began to use the scan, the program feature that allowed to look for JPEG photos, that they're called JPEGs, images of child pornography popped up right away. His testimony was he stopped his search immediately, closed the computer, shut it down, and went to the court to get the new warrant. And if I might add one other thing concerning the issue of the laptop, the store owner in this case did assert his own possessory interest to the laptop by working with law into the matrix here that justifies the search. Thank you, counsel. Thank you. I think there were two critical omissions in the probable cause, excuse me, in the evidentiary hearing on the motion to suppress. What facts were not established was that the two numbers, the two additional numbers, credit card numbers, to which Mr. Scrocchi refers, which were the receipts from the second establishment, there was no proof, no assertion that these numbers had been stolen or used without the permission of the account holder. There were credit card numbers under another name, but there was nothing that established any fraud in terms of possession. Well, why isn't that a fair inference just from it being another name? I mean, if... John Doe presents credit card number for Mary Jean Rowe. She doesn't look like Mary Jean. Because to the extent that Judge Beislein made findings of deliberate fraud, there was actually no proof of a fraud here. There was no proof that he, that these account numbers had been stolen or used without permission of their owner. And there was certainly a suggestion that warranted further investigation, but there was absolutely nothing introduced at the probable cause hearing that established that, in fact, there had been a fraud perpetrated by the use of these other numbers. Now, with respect to Mrs. Langley's number, which is, of course, the issue here, there was, they did not establish at the hearing that Mrs. Langley's credit card number was found in Mr. Kamen's home. That is not in the record. So what we're talking about is deliberate fraud with respect to the visa card number, and that was not a critical fact established in the hearing. Therefore, the government did not carry its burden. Now, with respect to the search warrants, I think it's important to clarify that the first search warrant was only to seize the last laptop. That's according to the applicant for the search warrant. He did not ask to search the laptop. The second warrant was for seizure of the gateway, the desktop, basically, and electronic media, but once again, that was a request to seize and not to search. As to the supposed consent search by the vendor of the computer, he was contacted. He did not himself contact the police. He was contacted by Corporal Rojas, who asked him for permission, told him that they wanted to look at the laptop and could he have his permission. And the owner told Officer Rojas was he didn't want it returned to him with any contraband on it. It's fair to read that record and read that statement and the characterization of their conversation in the historical context of the case, which is during the execution of the first warrant, Officer Rojas learned that Mr. Kamen had a history related to child pornography. So it's fair to say, I think, obviously what happened was that Officer Rojas calls up the owner and says, do you think this guy has child pornography on the laptop? And the owner says, I don't want to see it. I don't want any contraband on the laptop. And at that point, Officer Rojas obtains the owner's purported consent. So I don't think it's fair to read this so-called consent search in the context that Officer Rojas gave it, which was strictly as a look-see for credit card numbers. It was a look-see for child pornography, and that's apparent from the conversation reported by Officer Rojas. What happened was... You've gone pretty far over time. I'm sorry. Excuse me. Thank you very much. Thank you, Counsel. United States v. Kamen, that's submitted. LaTarte v. Alaska Airlines, that's submitted. Esperanza v. Ashcroft, that's submitted. Walter, United States v. Henry. Thank you.
judges: Hall, Kleinfeld, Wardlaw